Good morning, Your Honors, and may it please the Court, Jessica Weber for the Plaintiffs' Appellants, and I'd like to reserve four minutes of my time for rebuttal. This Court has said that trial courts must work to uphold a jury's verdict, that they must give the jury's findings substantial deference. In this case, the jury, after hearing several days of evidence about how LACCD repeatedly and often intentionally violated the plaintiff's rights under the ADA, including evidence that plaintiffs were shut out of their education, that Roy Payan, for example, was made to sit through classes unable to meaningfully access the content, unable to participate because he was getting textbook chapters late, he wasn't getting access to handouts, he couldn't access the educational software everybody else was using to learn. The jury heard this and came back with a verdict, finding that LACCD had violated the ADA in 14 different ways, nine of them intentionally, and awarded compensatory damages. There are two main questions on this appeal. The first is, should the jury's judgment about what amount of damages would fairly compensate the plaintiffs for their harms, should that have been overturned? And second, is the District Court's limited injunction sufficient to ensure that the widespread violations here, most of them intentional, that they don't continue? So I will start with the damages issue and then move to the injunction unless the court prefer otherwise. There are three independent reasons the District Court's decision to really gut the jury's damages award should be reversed. I'll list them all and then happy to go into each separately. So the first reason, and I want to highlight that this reason doesn't require the court to even reach the issue of the availability of emotional distress damages. And that first reason is that the jury's award properly compensated the plaintiffs for their loss of educational opportunities. That finding is consistent with the District Court's instructions to the jury, was supported by the evidence in the case, and remains permissible even after Cummings v. Premier Rios. Counsel, I thought that the District Court had told the counsel that he would not permit to either emotional damages or the lost educational opportunities to go to the jury. Yes, Your Honor. So the District Court judge had told counsel that, however, that was not in the presence of the jury and the only instruction to the jury on damages, and I could read it, is damages means the amount of money that will reasonably and fairly compensate the plaintiff for an injury you find was caused by defendant's violation. It's just hard to understand how the jury could reasonably award damages for lost educational opportunities if you were prohibited from discussing lost educational opportunities to the jury, either in your trial evidence or in your closing. I understand there's some things that you said effectively trying to emphasize what was lost, but it's, you certainly were not able to put in any facts or figures or try to quantify anything. You didn't bring in any experts, because that would have been prohibited under the judge's in limine order. So we didn't bring in experts, but we did have a great deal of evidence about, from the plaintiffs, about being denied educational opportunity. I mean, I can give you just one, I mean, we cited this in our brief. There's a lot of testimony about being relegated to being spectators in their education rather than participants, really being shut out of classroom discussion, not having the opportunity to engage. I mean, I can, there was one question asked of Mr. Payan about his philosophy class about what impact, if any, not getting the handouts on time had on his ability to learn in that class. And he answered, it did have, it did impact my ability to learn, quote, I didn't have the opportunity to participate at the same level of participation as the rest of the   There was a lot of information that I would have liked to participate in, and I thought that I could have contributed something, but because I didn't have the handout, and I didn't have the benefit of viewing the PowerPoint, I didn't know what I missed and what I could have benefited from. That is loss of educational opportunity, and there is value to learning, there is value in signing up for community college, right, as the first step, it's the gateway to higher education of investing in yourself for self-betterment. There is value in that beyond a cost of a textbook. I agree with all that, so you can presume, for purposes of my question, that I agree with you that the damages can be awarded to your client. The question, though, is the district court at least thought in the remitter order that because no evidence had come in on that, that the jury's verdict was not tethered to anything. So I think your question, Your Honor, really hinges on, can loss of opportunity damages, is it only proven through receipts? You know, here are my out-of-pocket expenses related to my education, or is it- I'm just wondering whether, you know, if we had done this right the first time, again, assuming that the loss of educational opportunities is a proper contract remedy, you certainly would have handled this very differently, and the school would have handled this very differently. You would have argued, here's the lost opportunities, and we're going to try and place some kind of value on that in contract. So I mean, one thing that we could do here is send us back simply for trial on the damages. I would hope you'd figure out how to settle that one, but then it would all be up front on the table. We have to read into the jury's verdict something that you could not argue to them. Your Honor, so two things. One, obviously, you know, attorney's arguments in closing or opening, that's not evidence. Here the evidence in the case, and let me just back up, that the courts that have found a loss of opportunity, that it's still recoverable under Title II v. ADA, have noted that it's a non-pecuniary type of damage, that there's value beyond the particular cost of things, and that it's similar to the way juries are called upon to evaluate loss of goodwill, reputational damages. So there are other contexts in which juries, using common sense, listening to the evidence, have put value on things that don't have a concrete economic value. But Mr. Brown, because you were prohibited from saying, and the judge did not instruct the jury, you may award damages for lost educational opportunities, there's also the possibility that the jury simply awarded these damages for emotional distress. And so I want you to presume for purposes of my question that I believe that there's a contract remedy, but I don't think there's a tort remedy. So now we've got a jury that's just kind of free-floating, just giving damages, and we have no way of knowing whether it can be assessed to one, sort of one bucket or the other, or something else. So this court has held that courts must try to harmonize jury's findings in any way possible. Here I hear you. There's an ambiguity to how we classify the jury's damages award. However, there was evidence throughout the case, a lot of it by the plaintiffs explaining how they lost the value of their education, how they did not benefit. But there also would have been evidence about their emotional distress over this whole situation. Your Honor, there actually had not been, because that was precluded. So we never asked in trial, how did you feel about it, right? We didn't talk about their feelings the whole trial. What we talked about is, did you miss out? Were you able to learn? Could you participate? And the answers we got were consistently, no, we did not get the value of the bargain. We signed up for an education. We did not get it. The jury heard that, and they got the instruction that you can consider any amount that reasonably and fairly compensates the plaintiff for any injury, as long as it's tethered to the evidence. They heard that evidence, that plaintiffs did not get the value of their education, and they returned damages award based on that. It's true the judge also noted, you can consider economic expenses, but that instruction wasn't preclusive. And I'll note that LACCD did not object to this instruction. That would have been the chance for them to tell the district court judge, no, no, no, limit this instruction. Make sure the jury knows they can't award lost opportunity damages. They did not do that. And so that is one very clear way that the court can harmonize the jury's award with the law. Counsel, let me ask, what is it that you want from us? What sort of remedy would you like us to be able to provide? So on the damages issue, we would like this court to reverse the district court's decision granting remitted or so reinstating the jury's damages award. Judge Bybee is correct. We could see, we certainly could seek a fourth trial in this case. I will tell you we'd rather not. I mean, it sounds just dreadful. I'm sympathetic. I'm just trying to figure out. And honestly, I mean, if we were to get a new trial, it would be so we could get additional damages, right? We could more clearly state our position. We're willing to settle for what the jury awarded, not being able to argue they could award emotional. I'm sorry, not be able to argue they could award lost opportunity damages. But we still got in the evidence of loss of educational opportunity. And so we are simply seeking a reinstatement of the jury's damages award here. One clarifying question. The in limine order from the judge actually referred to loss employment opportunities, not lost educational opportunities. I assume that was just a typo. I'm assuming so, Your Honor. I do want to move just and briefly the other independent basis, of course, is that LACCD forfeited the argument that emotional distress damages are unavailable by failing to raise at any time between 2017 when the case was filed and the 2019 trials as this court is held in asphalt versus L.A. United School Districts. The argument that emotional distress damages are unavailable under Section 504 have been colorable since at least 2002 when Barnes versus Gorman was decided. Yet LACCD waited eight days before the retrial in 2023 to first ask the court to preclude those damages, which was highly prejudicial to plaintiffs. So that I have some time to address the. Sorry, counsel, let me interrupt you there. Explain to me how that was highly prejudicial to you, because I feel like you just told us, hey, I put I put evidence in. I you know, I can show you how there is lost opportunity. But now you're saying, well, wait a second. Had they not done that, we could have done a better job. So your honor, we would have supplemented not only with the loss of value of education in terms of non-pecuniary damages, but we would have put forth we would have focused discovery would have had more evidence of the economic loss as well. I mean, I can give you one example. Back in 2019, we actually had a vocational economics economist expert who had an opinion about lost wages because of the delay in receiving degrees from LACCD. The judge in 2019 precluded that expert from testifying. We didn't appeal that issue back in 2020 because we had been awarded emotional distress damages and we were fine with that. Had we known that there would have been a challenge to emotional distress damages, we certainly would have challenged that ruling. In addition, and the Boker case from from this court speaks about the prejudice of scrambling to kind of come up with a new theory of the case, a new theory of damages. We did it here, your honor, but we could have done even more. But for the last minute removal of this type of damages. And when did the Cummings case come out? It came out in April 2022, your honor. And so LACCD waited almost a year at that point to ask the court to preclude emotional distress damages. They didn't do it in an emotional limine. The pretrial order in this case, we we added we had in there the plaintiffs had in there that we were seeking emotional distress damages in addition to other types of damages. Defendants said nothing in the pretrial order. And there's certainly case law that by failing to raise that defense there, they have waived it additionally as well. I do want to quickly move on to the injunction issue. I'm not going to rehash all of our arguments in our brief, but I want to highlight two central things with the injunction. So you know, as I mentioned, the jury here found 14 different ADA violations, nine of them intentional. The injunction addressed only four of those violations, really three issues. And the two points I want to highlight are one, the most glaring omission from the court's injunction is the failure to order LACCD to provide timely educational course materials. That is really foundational to the educational experience, getting your textbook chapters on time so you can keep up with class. But the injunction has nothing in there about it, even though the jury found that that was done, that violation was intentional. And the district court provided no explanation for why it omitted that particular form of relief from the injunction. The second overall point I just want to make about the injunction is, in essence, even though it is plaintiff's burden to prove a need for an injunction, it is when defendants argue that the reason an injunction shouldn't issue on certain points is because they've changed their ways, that is really a mootness argument. They are arguing voluntary cessation. And this court and the Supreme Court have made clear that that is a formidable burden. Defendant has to make it absolutely clear that the legal misconduct won't reasonably occur. LACCD fell far short of meeting that burden, and the district court didn't hold them to that burden, and that is legal error. And I mean, just by way of example, the two pieces of evidence the district court pointed to to show that LACCD had sufficiently changed its ways were its efforts to overhaul its websites to make them accessible, and its adoption of this new policy, the equally effective alternative access policy, the EEAAP. The websites, we had undisputed evidence that they remained inaccessible as of the summer of 2023, six years after this case was filed. That evidence was undisputed. Even the district court must have credited it because it included an order to fix the websites as part of the injunction. So that's one. The EEAAP plan is yet another policy on paper. The evidence in this case showed at least five different policies on paper that were very good, requiring LACCD to make sure their educational technology was accessible and to provide course materials on time. It ignored its policies for the entire time at issue in this case. No reason to think they're going to start implementing the policy, and in fact, we had an expert testimony opining that these policies were insufficient, even as written. I do want to save some time for rebuttal, so I will pause there. Thank you. Thank you. Good morning. May it please the court, David Urban for Los Angeles Community College District. LACCD takes its obligations to the sight-impaired and other students with disabilities very seriously. It has chosen not to appeal the injunction in this case, to abide by it, and to do right by the sight-impaired and other disabled students at its colleges. I'd like to first address the damages issue. In terms of just the waiver argument, Cummings was decided in April of 2022. In August of 2022, we objected to jury instructions on emotional distress on the basis that Cummings had been decided and that they are no longer available. We did not ambush them at trial. It's ECF 444, plainly described to plaintiff's counsel. What plaintiff is saying is that we waited to make a motion until later, but we had raised that issue with them, and they are seasoned plaintiff's lawyers who would know that Cummings was decided and that it impaired the ability to get emotional distress damages for Title II cases. What about the argument of opposing counsel that you knew this was available since around 2002, or potentially available? I know Cummings didn't come out until way later, but... From Barnes v. Gorman? Barnes v. Gorman dealt with punitive damages, a different aspect. It actually talked about that element of damages being special, and being something that was unique for contract remedies. It's kind of further out from contract remedies than emotional distress damages, so Cummings brought it in a little closer, saying that emotional distress damages are precluded. Very quickly, plaintiffs did not ask the jury for either emotional distress damages or lost opportunity damages, 8 ER 1439. They asked for tutoring, textbook, handbook, modest damages. That's what they asked the jury for. The jury was not instructed on either emotional distress or lost... Weren't they prohibited from asking for those things? They are. I'm going through the list of why. I mean, they were prohibited, Your Honor. Okay. I mean, it's not like we can fault them for not having argued that. You told the district judge they shouldn't be allowed to do that, and the district judge agreed with you. That's correct, Your Honor. They're asking to reinstate the verdict. Reinstate a verdict. They said they do not want a retrial on damages. So they want... But you think that's the... Do you think that's the remedy here? Is that your bottom line? No. They haven't asked for a retrial, so they basically said they would like this court... Well, I'd like to know what you think... If we think that the district court was wrong, then what do you think we need to do? There's nothing... You just have to affirm, even though the district court was wrong, because it was correct to grant the remitted or motion. Even if lost opportunity damages were available, then they're not asking for a retrial. They're asking to have a jury verdict awarded in which, as this court pointed out, there's no understanding where the $242,000 came from. Is it emotional distress, which is unavailable? Is it lost opportunity? The jury awarded 242-plus attorney's fees, so they're not asking for attorney's... But if the district court got that wrong on the contract remedies... Yes. And so you... I'm sorry, Your Honor. They did not get that wrong on contract remedies. The district court was correct in precluding lost opportunity, not because it's unavailable under Title II, but because they had not presented evidence of reasonable certainty that would persuade the trier of fact. The court looked at... Wait a minute. But I thought that they were precluded from making that argument. Didn't the motion in limine prohibit them from arguing that they were entitled to lost opportunity? It did, Your Honor. Okay. So if they can't do that, and we find that that's error, then we've kind of got two ways that we can go here. We can either send this whole thing back for a trial on remedy, and maybe even broader, I don't know, but at least a trial on the remedy, on the damages. Or we can say, well, it's not perfect, but the $218,000 for Mr. Payan represents the jury's best view as to what his damages were. Understood, Your Honor. As to Item 1, a retrial on damages, plaintiffs have just said to this Court, and they say in their papers, they do not want a retrial. They want a reinstatement. So that option is off the table. Well, I'm not sure why it is, but I'll, okay. I understand your point. Okay. The second option? It's not off my table. So just... Okay. Understood, Your Honor. I've got a big table here. You do. You do. Okay. The second option, the $242,000, there's just no accounting for what it is. And I'll explain further why it's improper. Also, since they only asked for those damages, our defense focused on those damages. We did not, we were not on notice. We needed to present an emotional distress as an issue at trial. Not aware that we would need to address lost opportunity. Defendant would be severely prejudiced by reinstatement of an award that was a damage... Which means you were also damaged by the District Court's ruling on the motion in limine. Well, we weren't. Because you're now not presenting a defense as to those questions. We were not presenting a defense. But you did ask the district judge not to allow those kinds of damages. We did. Okay. I mean, it's... Okay. We're pretty much in the weeds here, counsel, but you sort of invited this error. I invited the error. We asked the judge for a ruling. The ruling was sound on lost opportunity damages, and I'll explain why. So, what is your current position on appeal on this lost opportunity damages? Are they available as a legal matter under Title II of the ADA? What's your position now? On that, we think that... Yeah, on appeal here. We actually have not taken a position. Cummings emotional distress damages, not available. Lost opportunity damages, they definitely have to be proved with reasonable certainty. And that is clear. And the judge correctly ruled that lost opportunity damages were not available because nothing the judge was seeing had any kind of reasonable certainty. The quote that plaintiff's counsel read, that was the best quote that they have, presumably for lost opportunity damages. There was no number associated with that. There was no quantification whatsoever, even from lay witnesses like Mason and plaintiff about what the lost educational opportunities damages were. So it would be impossible for the jury to award those. The jury was not instructed on lost opportunity damages, not instructed on emotional distress. Someone would come in who's not a lawyer, a juror, and they're expected to award emotional distress damages having received no instruction on them. So it would be impossible to reinstate this damages award that we don't know whether it's prohibited emotional distress or whether it's lost opportunity damages that... So let me ask this, counsel. And I believe Judge Bybee asked you, but I don't know that we got an answer. If we believe that the district court got it wrong and lost opportunity damages should have been available, what are you asking us to do? I know that you would say, no, they got it right. But let's assume we say, no, we think they got it wrong. Should we just reinstate the award? Or should we say you have to have a retrial on damages? Affirm the award of remitted or because plaintiffs have not asked for a retrial. There's no way to determine what the 242 is. You'd have to affirm the district court. I mean, I know I hasten to add the district court got it right on lost opportunity damages given the state of the evidence presented to the judge. So we affirm the jury award of 200 and plus thousand dollars? No, Your Honor. You would deny it. You'd affirm the motion for remitted or reducing the award to 1650. Even if we think they got it wrong? Even if we think that the trial court got it wrong? Absolutely, Your Honor, because they have not requested a retrial on damages. They've requested reinstatement of the jury award that their papers say that. Plaintiff's counsel has said that this award cannot be reinstated. I know it's a conundrum for a court if it thinks that there was an error in the allowing of lost opportunity damages, but that's the state of this. This case has been around since 2017. It's been through a number of trials. I can certainly understand why there would be some kind of, but plaintiffs would want some kind of resolution, as certainly does the district. We would like to remedies these issues and move along. By the way, going back to it, it's 2015 to 2018 violations. This goes on to the injunction, but we've revised the websites at substantial expense so that they're WCAG 2.1 AA compliant. That's detailed in all of our declarations. There's a new EEAP process that assures procurement of materials that are accessible to blind students. We'd like to move on to that. I think everybody wants this case to conclude. Counsel, have you considered mediation? We have a very fine mediation unit. We did that last time. But you now have a jury verdict, and you have benefit of at least 10 minutes of your time arguing here. I don't know. Certainly. We would certainly consider the mediation project. If we did it last time, we would certainly be willing to do it again. So moving on to the injunction, basically, it's less extensive than the first time. This court actually, last time, found that the injunction was overly broad. This time, it requires websites to be WCAG 2.1 AA compliant, a fairly high standard, and we believe we are achieving that. The library resources, the plaintiff struggled with some of the resources in the library. The district court's injunction requires four items of improvement for the city college library, and those have been put into effect. Accommodation letters, they used to be in paper format at the time of the 2015-2018 time period. They are now electronic, available to plaintiffs, and then the procurement system has been revamped. That was detailed in the trial, or in, like, bench trial proceedings after the verdict was rendered. The injunction is reviewed by this court under an abuse of discretion standard. They point to things that they feel unhappy about, no more. Counsel, as I understand the concern, the jury came back and found that there were a number of violations by your client, that they were intentional, and the district court, with respect to certain kinds of accommodations, said, well, these are one-off incidents. And that seems a little odd. Sometimes we only have a single plaintiff, which means it can only be a one-off by definition because everything must be directed to a single plaintiff as opposed to a class. So I'm a little concerned as to why the district court didn't give injunctive relief as to matters on which the jury said the school district violated the ADA. Injunctive relief is not intended to punish the defendant, or even to compensate the plaintiff in many respects. It's intended to prevent the violation from happening again. Right. Why shouldn't the district court have issued certain kinds of orders with respect to accommodations, with respect to access to PowerPoints and other kinds of classroom materials? Seems like that would have been simple enough to have ordered without violating some kind of federal state comedy. Certainly, Your Honor. The judge did that because after the jury verdict was rendered in the summer of 2023, he heard evidence on all the violations, what's happening currently at the district. 2023 was a long time from 2017, 2018, et cetera, when these violations happened. So witnesses from the district came in and testified before the judge, here is what happens now. There's declarations from Nicola Abel Lopez and Carmen Litz, they're vice chancellors of the district. So have you voluntarily, is this a voluntary cessation question? No, Your Honor. One instance of liability, for example, Mr. Pine went into a class, he was going to audit it. He had a tape recorder. The professor saw his tape recorder and said, you can't tape record the class. This is in, you know, I think it was 2018, and Mr. Pine said, I'm sight impaired, I need to tape the class. And the professor said, no, you can't, you can't, nobody can tape this class, it's prohibited. The professor didn't know that he was required by policy to allow recording for any sight impaired student. It's actually a statute. It's certainly a policy of the district that that has to be done. So this is basically one professor making a, you know, a mistake that's very, very unfortunate. But it did happen only once. And the court, if the court issues an injunction now, all professors must, must permit recording. It would simply be duplicative of state law, and it would really be unnecessary. It's far after the fact. And the judge did hear evidence from our witnesses who said that everything, basically said that they're fine now. And the judge nevertheless said, you say they're fine, but for the websites, we're going to make you, under a penalty of injunction, comply with a very high standard, WCAG 2.1 AA. We're going to, although you say your EAP process will prevent violations of the ADA, the judge required us to periodically monitor the voluntary product accessibility templates, VPATs, from third party vendors. So that if we can't just take their word for it, we have to periodically monitor whether they are actually saying their accessibility standards correctly. So that's, that's basically the point of the injunction. And also there's the overall consideration that if this court did remand for more proceedings on the injunction, it would be the third injunction in this case. And it seems like there would need to be, there would need to be closure at some point of this matter. Same for the damages. If, and I understand there's an interest in mediation by this court, but we were sent to the mediation program last time, happy to do it again. I actually have nothing further, but if you have questions. Thank you. Thank you. I know I have just a little time remaining. I just want to hit a couple of points. First, with respect to the damages, I again just want to emphasize the court's instruction allowed for lost opportunity damages. LACCD never objected to that instruction. That could and should end the inquiry right there. So that's number one. The second is opposing counsel talked about the reasonable certainty requirement from the restatement of contracts. And I'll just, and this is in our reply brief, but the restatement talks about how other factors including willfulness sometimes require a lesser degree of certainty, but also that damages need not be calculated with quote mathematical accuracy. And it gives us an example of when that's the case, the loss of goodwill, which juries regularly approximate. So that's on the damages point. On the injunction, I'm glad Judge Bybee raised the one-off issue. I mean, this is a case where the jury found, I mean, according to LACCD, multiple one-offs, which really shows a pattern. And every one-off, I mean, I know opposing counsel talked about how the recording issue violated a policy. Every single one of those violations violated an existing policy at LACCD, which is why the jury found deliberate indifference. And so an injunction here is truly necessary to ensure that this doesn't keep repeating, that the next National Federation of the Blind member who attends LACCD doesn't get their textbook chapters late and have to start a new lawsuit all over again. Thank you, Your Honors. Great. Thank you both for the helpful argument. The case is submitted.
judges: BYBEE, LEE, ALBA